**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PORCSHA TALLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:26-cv-12479** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ALIYAH OF GLENWOOD LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | **Jury Trial Demanded** |
| | ) | |

# COMPLAINT

Plaintiff, Porscha Talley ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Aliyah of Glenwood LLC ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, ("ADA") seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

2. This lawsuit further arises under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA") seeking redress for Defendant's interference with Plaintiff's FMLA rights and for Defendant's retaliation for Plaintiff requesting their FMLA rights.

3. This lawsuit arises under Illinois common law and the (820 ILCS 305/) Illinois Worker's Compensation Act (IWCA), seeking redress for Defendant's retaliatory discharge of

Plaintiff's employment for Plaintiff's engagement in protected activity, namely, asserting her rights under the IWCA, in violation of public policy.

**JURISDICTION AND VENUE**

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. This action is authorized and instituted pursuant to 42 U.S.C. § 12101 et seq.

5. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

6. This Court has pendent jurisdiction and supplementary jurisdiction of Count VII-VIII through 28 U.S.C. §1367.

**VII-VADMINISTRATIVE PREREQUISITES**

7. All conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*, and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. have occurred or been complied with.

8. A charge of employment discrimination on basis of disability and retaliatory discharge was filed by the Plaintiff with the Equal Employment Opportunity Commission ("EEOC") (Attached hereto as Exhibit "A").

9. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B"), and Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

10. Plaintiff, Porcsha Talley, is a natural person, over 18-years-of-age, who at all times relevant to the allegations in this Complaint resided in Cook County, Illinois.

11. Defendant, Aliya of Glenwood LLC, whose address is 19330 S Cottage Grove Avenue, Glenwood, Illinois 60425-1834, is a limited liability company that at all times material to the allegations in this Complaint was doing business in and for Cook County, Illinois.

12. Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4) and was an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2)(A).

13. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA and the FMLA 29 U.S.C. §2611(4), and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A).

14. Defendant was an "employer" within the meaning of 740 ILCS 174/5.

15. During the applicable limitations period, Defendant has had at least one employee, and has been an "employer" as defined by 740 ILCS 174/5.

## BACKGROUND FACTS

16. Plaintiff was employed by Defendant as a Certified Nursing Assistant (CNA) on or about March 29, 2023, until she was unlawfully terminated on or around July 26, 2026, on the basis of her disability and use of protected medical leave.

17. Plaintiff has mental and physical impairments that substantially limit major life activities.

18. Specifically, Plaintiff suffers from cervical strain, cervical radiculopathy, a

herniated disc, and a concussion without loss of consciousness.

19. Plaintiff's disabilities can substantially limit major life activities, such as her ability to lift, stretch, or pull over 10 pounds.

20. Regardless of Plaintiff's disability, she was qualified to perform the essential functions of her job, with or without reasonable accommodation.

21. Plaintiff is a "qualified individual" as defined under the ADA.

22. On or about December 13, 2025, Plaintiff suffered a serious injury arising out of and in the course of her employment when she was assaulted by one of the residents of the facility.

23. As a result of the assault, Plaintiff suffered workplace injuries to her neck and arm that also caused significant back pain.

24. Plaintiff's workplace injuries led to her diagnoses of cervical strain, cervical radiculopathy, a herniated disc, and a concussion without loss of consciousness.

25. Following the injury, Plaintiff experienced difficulty with major life activities such as lifting her arm, reaching for things, lifting objects, and performing other physical activities required by her position.

26. Plaintiff immediately reported the workplace injury to Defendant's Human Resources department and to the active administrator at the time, Bobby LNU, on or about December 13, 2025.

27. Plaintiff completed an incident report and provided it to Human Resources placing Defendant on notice of her workplace injury.

28. At Human Resources' direction, Plaintiff was sent to Concentra that same day for medical evaluation.

29. Plaintiff understood that she was required to obtain medical treatment within 24 hours of the injury, where Plaintiff received her diagnoses.

30. Defendant immediately filed a workers' compensation claim concerning her workplace injury on or about December 13, 2025.

31. Her workers' compensation claim was approved on or about December 14, 2025.

32. Defendant did not oppose the injury or, to her knowledge, dispute that the injury occurred in the course of her employment.

33. Defendant therefore had immediate and continuing knowledge of her medical condition, the circumstances of her injury, her treatment, and her resulting work restrictions.

34. The following week, Defendant placed her on light-duty work as an accommodation for her injury.

35. Initially, Plaintiff was assigned duties such as wiping wheelchairs, passing out water, and organizing rooms.

36. Although these assignments were considered light duty, Plaintiff continued experiencing significant pain while performing them, particularly while organizing rooms and passing out water.

37. After Plaintiff informed Human Resources about the pain she was experiencing, Defendant reassigned Plaintiff to charting.

38. Plaintiff was permitted to perform charting work, which allowed her to work within her medical limitations.

39. Plaintiff’s physician-imposed restrictions that included no lifting, pushing, or assisting with anything over 10 pounds.

40. Defendant was aware of these restrictions and Plaintiff's need for accommodation.

41. Plaintiff understood that the purpose of her light-duty assignment was to allow Plaintiff to continue working while remaining within the restrictions imposed by her treating physician.

42. Initially, Defendant accommodated those restrictions, and she was able to perform charting and other work that did not require Plaintiff to exceed the limitations imposed by her doctor.

43. The situation changed after Bobby, the administrator who had been overseeing her employment, was terminated.

44. Defendant hired a new Director of Nursing and a new administrator, Juliet LNU.

45. After the new administration began, Defendant changed her schedule from the overnight shift to the day shift.

46. Plaintiff had originally worked overnight, and she did not want her schedule changed because her body had become accustomed to the overnight schedule.

47. Working overnight also allowed Plaintiff to rest during the day and take her pain medication as needed.

48. Upon information and belief, Bobby had previously obtained corporate approval allowing Plaintiff to continue performing light-duty work on the overnight shift.

49. Defendant nevertheless told Plaintiff that company policy required light-duty work to be performed during the day.

50. Immediately, Plaintiff engaged in protected activity and complained about the schedule change because she was concerned that the change would interfere with her ability to

manage her injuries, pain, rest, and medication.

51. More importantly, once Plaintiff was moved to the day shift, Defendant began assigning Plaintiff physically demanding duties that were inconsistent with her medical restrictions.

52. After Plaintiff was moved to the day shift, Defendant assigned Plaintiff laundry duties that required her to lift and move clothing and engage in constant physical movement throughout eight-hour shifts.

53. Thereby, Defendant failed to accommodate Plaintiff's restrictions by requiring her to perform duties that caused pain and requiring her to perform physical activities that she was not permitted to perform under her medical restrictions.

54. Despite knowing that Plaintiff had restrictions prohibiting lifting, pushing, or assisting with anything over 10 pounds, administrator Juliet continued assigning Plaintiff laundry and other physically demanding duties that Plaintiff believed exceeded those restrictions.

55. Plaintiff repeatedly engaged in protected activity and complained about this treatment to Human Resources and to Juliet.

56. Plaintiff made complaints both in person and by email.

57. Specifically, Plaintiff informed Defendant that she was required to perform work that was outside of her medical restrictions and that the work was causing her additional pain.

58. Plaintiff continued to inform Defendant that she wanted to work but needed to be allowed to work within the restrictions imposed by her physician.

59. Rather than consistently honoring her restrictions and working with Plaintiff to determine appropriate accommodation, Defendant continued assigning duties that exceeded her

necessary medical restrictions.

60. Plaintiff repeatedly brought the issue to Human Resources and management because she was attempting to remain employed and continue performing her job without jeopardizing her health or violating her physician's restrictions.

61. In or around January 2026, because of Defendant's treatment of her workplace injury and the ongoing problems concerning her medical restrictions, Plaintiff retained a workers' compensation attorney.

62. Plaintiff's attorney communicated with Defendant concerning the fact that she was being required to perform work outside of her restrictions.

63. Defendant therefore had additional notice that she was asserting that the work being assigned to her was inconsistent with her medical restrictions and that she was seeking to work within those restrictions.

64. After Plaintiff's attorney became involved, Plaintiff experienced additional problems concerning her accommodation.

65. Juliet and Human Resources began retaliating against Plaintiff for her need for accommodation by making it difficult for Plaintiff to be assigned work that would allow her to continue working safely.

66. The timing of Juliet and Human Resources' additional restraint on Plaintiff's accommodations demonstrate that Plaintiff was being retaliated against for seeking Workers' Compensation.

67. For example, Plaintiff sought to use a chair while performing laundry duties because of her physical limitations and pain.

68. Rather than simply working with Plaintiff to identify a safe and reasonable way for Plaintiff to perform available work, Juliet repeatedly told Plaintiff that she should return to her doctor and "tighten up" her restrictions.

69. Plaintiff believes these statements demonstrate pressure to change her medical restrictions rather than an effort to accommodate the restrictions that her physician had already imposed.

70. Throughout this period, Defendant knew that her physical limitations arose from a workplace injury, knew that she was receiving medical treatment, knew that Plaintiff had restrictions concerning lifting, pushing, and assisting residents or objects over 10 pounds, and knew that she was repeatedly complaining that assigned duties were exceeding those restrictions.

71. Defendant also was aware that she had previously been able to perform light-duty work, including charting, within those restrictions.

72. Leading up to Plaintiff's termination, Plaintiff was also being treated by her doctor for Post traumatic stress disorder (PTSD).

73. In or around March 2026, Plaintiff engaged in protected activity when she applied for FMLA leave because of her medical conditions and treatment.

74. Initially, Defendant approved her FMLA leave.

75. Plaintiff was approved for approximately two weeks of continuous leave beginning on or about April 1, 2026, through on or about April 17, 2026, with a return date of on or about April 21, 2026.

76. After the continuous leave period, Defendant approved intermittent FMLA leave that allowed Plaintiff to take approximately two days per month for doctors' appointments,

treatment, emergencies, and medical flare-ups.

77. Plaintiff understood that the intermittent FMLA approval was to remain in effect through in or around April 2027.

78. Although Plaintiff was scheduled to return to work on or about April 21, 2026, Plaintiff did not return because she was still being treated for her workplace injuries and remained under the care of her doctors.

79. Plaintiff had not been medically cleared to return to unrestricted full-duty work.

80. Plaintiff remained subject to medical restrictions, including the restriction against lifting, pushing, or assisting with anything over 10 pounds.

81. Defendant required Plaintiff to return to work without restrictions even though she was still being treated for her injuries and had not been released by her physician to perform unrestricted full-duty work.

82. Plaintiff continued attempting to work with Defendant concerning a return to work that would comply with her medical restrictions.

83. Plaintiff repeatedly communicated that she remained willing and able to return to work and that she wanted to return under the restrictions that Defendant had previously accepted and accommodated shortly after her injury while on the job.

84. Plaintiff did not refuse to work or abandon her position.

85. Plaintiff continued trying to communicate with Defendant and continued expressing her willingness to return if she could do so within her medical restrictions.

86. Defendant, however, stopped responding to her attempts to work out a return-to-work arrangement.

87. Despite Plaintiff's continued efforts to return, Plaintiff did not receive any meaningful response from Defendant concerning how she could return to work with the restrictions that remained in place.

88. Beginning in or around April 2026, Plaintiff remained out of work and without pay.

89. During this period, Plaintiff continued receiving medical treatment and remained under the care of her physicians.

90. Plaintiff continued to believe that she was employed by Defendant and that she would be permitted to return once Defendant addressed the restrictions and return-to-work issue.

91. Plaintiff did not resign nor communicate that she wanted to resign as she was willing to return to work within her medical restrictions.

92. On or about July 26, 2026, Defendant characterized Plaintiff's employment as a voluntary resignation.

93. However, Plaintiff did not voluntarily resign, as she was still willing to return to work with her medical restrictions.

94. Plaintiff learned that Defendant considered her to have voluntarily resigned through her union after the union contacted Human Resources and Human Resources confirmed that Defendant considered Plaintiff to have voluntarily resigned.

95. Plaintiff had never communicated an intent to abandon her employment or voluntarily resign.

96. To the contrary, Plaintiff had repeatedly communicated that she wanted to return to work and was willing to return subject to the restrictions imposed by her treating physician.

97. Defendant's characterization of Plaintiff's employment as a voluntary resignation was pretextual and was the culmination of its failure to accommodate Plaintiff's disability and its refusal to meaningfully engage with Plaintiff regarding a return to work within her medical restrictions.

98. Defendant was aware of Plaintiff's desire to continue working and the ability to accommodate her with light-duty work.

99. Despite Defendant's knowledge of Plaintiff's medical restrictions and her complaints of Defendant's failure to honor those restrictions, Defendant failed to accommodate Plaintiff's disability.

100. According to Plaintiff's workers' compensation physician, Plaintiff had not completed her full course of treatment.

101. Plaintiff continued treatment and lack of a full-duty medical release demonstrate that her medical limitations did not simply end when Defendant unilaterally stopped scheduling Plaintiff and ceased communication in returning her to work.

102. Defendant effectively denied her request for reasonable accommodation, failed to engage with Plaintiff in an interactive process to determine the appropriate accommodation as required by the ADA, and ultimately terminated Plaintiff's employment on the basis of her disability and use of related leave.

103. Ultimately, on or about July 26, 2026, Plaintiff was terminated on the basis of Plaintiff's disability and engaging in protected activity as described above.

104. The purported justification for termination was unlawful discrimination based on disability or because Defendant perceived Plaintiff as disabled.

105. Although Plaintiff contacted her union about her termination, her union was significantly delayed and did not provide Plaintiff with any investigative results leaving Plaintiff no other option but to file this action.

106. Defendant interfered with Plaintiff's FMLA rights and retaliated against Plaintiff after Plaintiff took FMLA leave by failing to return her to work.

107. Plaintiff can show that she engaged in statutorily protected activity—a necessary component of her retaliation claim—because Plaintiff requested accommodation related to her workplace injury, filed for workers' compensation, and applied for FMLA leave.

108. Defendant unlawfully terminated Plaintiff in retaliation for Plaintiff attempting to exercise her rights in seeking medical care she was entitled to under (820 ILCS 305/) Illinois Worker's Compensation Act.

109. (820 ILCS 305/) Illinois Worker's Compensation Act states in pertinent part that:

> (h) It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.
>
> It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.
>
> (820 ILCS 305/4) (from Ch. 48, par. 138.4)
> (Text of Section from P.A. 101-40 and 102-37)

110. Plaintiff was terminated in retaliation for suffering a work injury and attempting to seek medical care related to this work injury.

**COUNT I**
**Violations of the Americans with Disabilities Act**
**(Disability-Based Discrimination)**

111. Plaintiff repeats and re-alleges paragraphs 1-110 as if fully stated herein.

112. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

113. Plaintiff met or exceeded performance expectations.

114. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

115. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

116. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

117. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

118. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

119. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT II**
**Violation of Americans with Disabilities Act**

**(Disability-Based Harassment)**

120. Plaintiff repeats and re-alleges paragraphs 1-110 as if fully stated herein.

121. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed the Plaintiff on the basis of Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

122. Defendant knew or should have known of the harassment.

123. Defendant's DON repeatedly targeted Plaintiff for her disability and altered her work conditions to make performing her duties exacerbate her disabilities.

124. Defendant also refused to permit Plaintiff's return to work and required Plaintiff to be free from restrictions despite their ability to accommodate her disability.

125. The disability-based harassment was severe or pervasive.

126. The disability-based harassment was offensive subjectively and objectively.

127. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, due to Plaintiff's disability.

128. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

129. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT III**
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

130. Plaintiff repeats and re-alleges paragraphs 1-110 as if fully stated herein.

131. By virtue of the conduct alleged herein, Defendant engaged in unlawful

employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

132. Plaintiff is a qualified individual with a disability.

133. Defendant was aware of the disability and the need for accommodations.

134. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

135. Plaintiff's reasonable accommodations that were requested was not an undue burden on the Defendant.

136. Defendant did not accommodate Plaintiff's disability.

137. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*., due to Plaintiff's disability.

138. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

139. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT IV**
**Violation of Americans with Disabilities Act**
**(Retaliation)**

140. Plaintiff repeats and re-alleges paragraphs 1-110 as if fully stated herein.

141. Plaintiff is a member of a protected class under 42 U.S.C. § 12101, *et seq.*

142. During Plaintiff's employment with Defendant, Plaintiff requested accommodations related to her workplace injury.

143. Plaintiff also engaged in protected activity when she complained that Defendant was failing to abide by her medical restrictions constituting discrimination against Plaintiff for her medical condition.

144. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

145. In response to Plaintiff's complaint, Defendant failed to conduct a thorough and objective investigation of Plaintiff's complaint of conduct that constituted disability-based discrimination.

146. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory or harassing conduct complained of by Plaintiff.

147. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff requesting accommodations and complaining of Defendant's failure to implement said restrictions, thereby violating Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

148. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

149. The timing of Plaintiff's termination indicates that there is a causal connection between her protected activity and subsequent adverse employment action.

150. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

151. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT V**
**Violation of the Family and Medical Leave Act**
**(FMLA Interference)**

152. Plaintiff repeats and re-alleges paragraphs 1-110 as if fully stated herein.

153. Beginning in or around March 2024, Plaintiff became eligible for FMLA leave by virtue of having been employed by Defendant for more than one year and having worked more than 1250 hours in the previous calendar year.

154. Defendant was an eligible employer who had more than 50 or more employees within a 75-mile radius.

155. At all times material, Plaintiff gave proper notice to her employer by informing them of her reason for needing medical leave.

156. Defendant controlled Plaintiff's work schedule and conditions of employment.

157. Plaintiff provided enough information for her employer to know that her potential leave may be covered by the FMLA.

158. Despite Plaintiff's FMLA eligibility, Defendant failed to notify Plaintiff of her eligibility status and rights under the FMLA and failed to notify Plaintiff whether her leave was or could be designated as FMLA leave.

159. When Defendant failed to notify Plaintiff of her eligibility status and rights under the FMLA and failed to notify Plaintiff whether the requested leave was or could be designated as FMLA leave, Defendant interfered with Plaintiff's rights under the FMLA.

160. Despite Plaintiff's FMLA eligibility, Defendant unlawfully denied Plaintiff's use of her FMLA rights.

161. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

162. As a direct and proximate result of the interference described above, Plaintiff has

suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT VI**
**Violation of the Family Medical Leave Act**
**(FMLA Retaliation)**

163. Plaintiff repeats and re-alleges paragraphs 1-110 as if fully stated herein.

164. Beginning in or around March 2024, Plaintiff became eligible for FMLA leave by virtue of having been employed by Defendant for more than one year and having worked more than 1250 hours in the previous calendar year.

165. Defendant was an eligible employer who had more than 50 or more employees within a 75-mile radius.

166. Defendant terminated Plaintiff after Plaintiff took FMLA leave related to her medication condition.

167. Specifically, Plaintiff took FMLA leave for her PTSD.

168. Defendant terminated Plaintiff because she took FMLA leave as described above.

169. Defendant intentionally engaged in unlawful employment practice in violation of the FMLA by retaliating against Plaintiff for taking leave for medical reasons.

170. Plaintiff's taking medical leave pursuant to the FMLA was a direct and proximate cause of Plaintiff's termination.

171. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT VII
### Violation of Illinois Common Law
### Wrongful Termination Against Public Policy

172. Plaintiff repeats and re-alleges paragraphs 1-110 as if fully stated herein.

173. Illinois common law recognizes a cause of action for retaliatory discharge/ wrongful termination against public policy.

174. Plaintiff's employment was terminated by the Defendant without any legitimate reason to do so.

175. Plaintiff's discharge was in retaliation for Plaintiff's engagement in the protected activity of asserting her rights under the IWCA- an action which public policy seeks to promote, as we want individuals to be able to freely seek medical care without fear of retaliation.

176. The termination of Plaintiff's employment violates a clear mandate of public policy.

177. By reason of Defendant's retaliation, Plaintiff suffered severe harm, and is entitled to all legal and equitable remedies under common law.

178. Defendant intentionally interfered, restrained, and retaliated against Plaintiff after she was injured on the job, sought medical attention, and attempted to exercise her rights pursuant to the IWCA.

179. Plaintiff was discharged because of Plaintiff's attempt to claim injury and compensation under the IWCA in violation of (820 ILCS 305/4) Illinois Worker's Compensation Act.

180. As a result of said interference, retaliation, and discharge, Plaintiff has suffered damages, including but not limited to loss of earnings, loss of ability to earn money, and mental anguish. The losses have occurred in the past and will continue in the future.

## COUNT VIII
## Violation of (820 ILCS 305/4) Illinois Worker's Compensation Act
## Demand for Relief for Retaliatory Discharge

181. Plaintiff repeats and re-alleges paragraphs 1-110 as if fully stated herein.

182. (820 ILCS 305/4) prohibits employers from retaliating against or discriminating against employees for exercising their rights under the Act.

183. Plaintiff suffered a work injury and attempted to seek medical care she was entitled to under (820 ILCS 305/4) Illinois Worker's Compensation Act, and exercise her rights.

184. Plaintiff was then terminated in retaliation for suffering a work injury and attempting to seek medical care related to this work injury.

185. As a result of said interference, retaliation, and discharge, Plaintiff has suffered damages, including but not limited to loss of earnings, loss of ability to earn money, and mental anguish. The losses have occurred in the past and will continue in the future.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay with interest;

b. Payment of interest on all back pay recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Liquidated damages;

h. Award pre-judgment interest if applicable; and

i. Award Plaintiff any and all other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 12th day of October 2026.

**/s/ *Nathan C. Volheim***
**NATHAN C. VOLHEIM, ESQ.**
IL Bar No.: 6302103
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 568-3056
Fax (630) 575 - 8188
nvolheim@sulaimanlaw.com
*Attorney for Plaintiff*

**/s/ *Sophia K. Steere***
**SOPHIA K. STEERE, ESQ.**
KY Bar No.: 100481
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Phone (331) 307-7634
Fax (630) 575-8188
ssteere@atlaslawcenter.com
*Attorney for Plaintiff*

**/s/ *Jake Fondel***
**JAKE FONDEL, ESQ.**
IL Bar No.: 6354446
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 272-5953
Fax (630) 575 - 8188
jfondel@atlaslawcenter.com
*Attorney for Plaintiff*