# Exhibit A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

☐ FEPA
☒ EEOC

**Illinois Department of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs., Mx.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Porcsha Talley | [redacted] | |

| Street Address | City, State and ZIP Code | Email Address |
|---|---|---|
| [redacted] | | |

| Street Address | City, State and ZIP Code | Email Address |
|---|---|---|
| **c/o Nathan C. Volheim, Sulaiman Law Group, 2500 S. Highland Ave., #200, Lombard, IL 60148** | | **employment@atlaslawcenter.com** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Aliya of Glenwood LLC | 15+ | (708) 758-6200 |

| Street Address | City, State and ZIP Code | Email Address |
|---|---|---|
| 19330 S Cottage Grove Ave | Glenwood, IL, 60425-1834 | kkimberly@aliyahc.com |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | 15+ | |

| Street Address | City, State and ZIP Code | Email Address |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☑ RETALIATION ☐ AGE ☑ DISABILITY ☐ GENETIC INFORMATION
☑ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| 12/13/2025 | 07/26/2026 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I, Porcsha Talley (disabled), was employed by Aliya of Glenwood LLC as a Certified Nursing Assistant ("CNA") from on or about March 29, 2023, until on or about July 26, 2026, when I was unlawfully terminated on the basis of my disability, use of related leave, and related workers' compensation claim. I have a physical and/or mental impairment that substantially limits major life activities. Regardless of my disability, I was qualified to perform the essential functions of my job, with or without reasonable accommodation.

The following is a non-exhaustive list of the disability discrimination, harassment, and retaliation I was subjected to:

On or about December 13, 2025, I suffered a serious injury arising out of and in the course of my employment when I was assaulted by one of the residents of the facility. As a result of the assault, I suffered injuries to my neck and arm that also caused significant back pain. My diagnoses included cervical strain, cervical radiculopathy, a herniated disc, and a concussion without loss of consciousness. Following the injury, I experienced difficulty lifting my arm, reaching for things, lifting objects, and performing other physical activities required by my position.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

08/25/2026

Date

Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

The signed document can be validated at https://app.vinesign.com/Verify

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

**Illinois Department of Human Rights** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I immediately reported the workplace injury to my employer's Human Resources department and to the active administrator at the time, Bobby LNU, on or about December 13, 2025. I completed an incident report and provided it to Human Resources. At Human Resources' direction, I was sent to Concentra that same day for medical evaluation. I understood that I was required to obtain medical treatment within 24 hours of the injury. Following the evaluation, I was diagnosed with a cervical strain, a contusion of the neck and shoulder, and a concussion without loss of consciousness. My employer immediately filed a workers' compensation claim concerning my injury on or about December 13, 2025. The claim was approved on or about December 14, 2025. My employer did not oppose the injury or, to my knowledge, dispute that the injury occurred in the course of my employment. My employer therefore had immediate and continuing knowledge of my medical condition, the circumstances of my injury, my treatment, and my resulting work restrictions.

The following week, my employer placed me on light-duty work. Initially, I was assigned duties such as wiping wheelchairs, passing out water, and organizing rooms. Although these assignments were considered light duty, I continued experiencing significant pain while performing them, particularly while organizing rooms and passing out water. After I informed Human Resources about the pain I was experiencing, my employer reassigned me to charting. I was permitted to perform charting work, which allowed me to work within my medical limitations.

My physician imposed restrictions that included no lifting, pushing, or assisting with anything over 10 pounds. My employer was aware of these restrictions. I understood that the purpose of my light-duty assignment was to allow me to continue working while remaining within the restrictions imposed by my treating physician. Initially, my employer accommodated those restrictions, and I was able to perform charting and other work that did not require me to exceed the limitations imposed by my doctor.

The situation changed after Bobby, the administrator who had been overseeing my employment, was terminated. My employer hired a new Director of Nursing and a new administrator, Juliet LNU. After the new administration began, my employer changed my schedule from the overnight shift to the day shift. I had originally worked overnight, and I did not want my schedule changed because my body had become accustomed to the overnight schedule. Working overnight also allowed me to rest during the day and take my pain medication as needed. I understood that Bobby had previously obtained corporate approval allowing me to continue performing light-duty work on the overnight shift.

My employer nevertheless told me that company policy required light-duty work to be performed during the day. I immediately complained about the schedule change because I was concerned that the change would interfere with my ability to manage my injuries, pain, rest, and medication. More importantly, once I was moved to the day shift, my employer began assigning me physically demanding duties that were inconsistent with my medical restrictions.

After I was moved to the day shift, my employer assigned me laundry duties that required me to lift and move clothing and engage in constant physical movement throughout eight-hour shifts. These duties caused pain and required physical activities that I was not permitted to perform under my medical restrictions. Despite knowing that I had restrictions prohibiting lifting, pushing, or assisting with anything over 10 pounds, administrator Juliet continued assigning me laundry and other physically demanding duties that I believed exceeded those restrictions.

I repeatedly complained about this treatment to Human Resources and to Juliet. I made complaints in person and by email. I specifically informed my employer that I was being required to perform work that was outside of my medical restrictions and that the work was causing me additional pain. I continued to tell my employer that I wanted to work but needed to be allowed to work within the restrictions imposed by my physician.

Rather than consistently honoring my restrictions and working with me to determine appropriate accommodations, my employer continued assigning duties that exceeded those restrictions. I repeatedly brought the issue to Human Resources and management because I was attempting to remain employed and continue performing my job without jeopardizing my health or violating my physician's restrictions.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>08/25/2026 [signature]<br>*Date* *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

**Illinois Department of Human Rights** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

In or around January 2026, because of my employer's treatment of my workplace injury and the ongoing problems concerning my medical restrictions, I retained a workers' compensation attorney. My attorney communicated with my employer concerning the fact that I was being required to perform work outside of my restrictions. My employer therefore had additional notice that I was asserting that the work being assigned to me was inconsistent with my medical restrictions and that I was seeking to work within those restrictions.

After my attorney became involved, I experienced additional problems concerning accommodations. Juliet and Human Resources began giving me difficulty regarding accommodations that would allow me to perform my assigned work safely. For example, I sought to use a chair while performing laundry duties because of my physical limitations and pain. Rather than simply working with me to identify a safe and reasonable way for me to perform available work, Juliet repeatedly told me that I should return to my doctor and "tighten up" my restrictions. I understood these statements as pressure to lift or minimize my medical restrictions rather than an effort to accommodate the restrictions that my physician had already imposed.

Throughout this period, my employer knew that my physical limitations arose from a workplace injury, knew that I was receiving medical treatment, knew that I had restrictions concerning lifting, pushing, and assisting residents or objects over 10 pounds, and knew that I was repeatedly complaining that assigned duties were exceeding those restrictions. My employer also knew that I had previously been able to perform light-duty work, including charting, within those restrictions.

Leading up to the end of my employment, I was also being treated by my doctor for PTSD. In or around March 2026, I applied for FMLA leave because of my medical conditions and treatment. My employer approved my FMLA leave. I was approved for approximately two weeks of continuous leave beginning on or about April 1, 2026, through on or about April 17, 2026, with a return date of on or about April 21, 2026. After the continuous leave period, my employer approved intermittent FMLA leave that allowed me to take approximately two days per month for doctors' appointments, treatment, emergencies, and medical flare-ups. I understood that the intermittent FMLA approval was to remain in effect through in or around April 2027.

Although I was scheduled to return to work on or about April 21, 2026, I did not return because I was still treating for my workplace injuries and remained under the care of my doctors. I had not been medically cleared to return to unrestricted full-duty work. I remained subject to medical restrictions, including the restriction against lifting, pushing, or assisting with anything over 10 pounds.

My employer asked or required me to return to work without restrictions even though I was still treating for my injuries and had not been released by my physician to perform unrestricted full-duty work. I continued attempting to work with my employer concerning a return to work that would comply with my medical restrictions. I repeatedly communicated that I remained willing and able to return to work and that I wanted to return under the restrictions that my employer had previously accepted and accommodated beginning shortly after my injury while on the job.

I did not refuse to work. I did not abandon my position. I continued trying to communicate with my employer and continued expressing my willingness to return if I could do so within my medical restrictions. My employer, however, stopped responding to my attempts to work out a return-to-work arrangement. Despite my continued efforts to return, I did not receive a meaningful response from my employer concerning how I could return to work with the restrictions that remained in place.

Beginning in or around April 2026, I remained out of work and without pay. During this period, I continued receiving medical treatment and remained under the care of my physicians. I continued to believe that I was employed by my employer and that I would be permitted to return once my employer addressed the restrictions and return-to-work issue. I did not understand myself to have resigned.

On or about July 26, 2026, my employer characterized my employment as a voluntary resignation. I did not voluntarily resign. I learned that my employer considered me to have voluntarily resigned through my union after the union contacted Human Resources and Human Resources confirmed that my employer considered me voluntarily resigned. I had never communicated an intent to abandon my employment or voluntarily resign. To the contrary, I had repeatedly communicated that I wanted to return to work and was willing to return subject to the restrictions imposed by my treating physician.

My employer's characterization of my employment as a voluntary resignation was pretextual and was the culmination of its failure to accommodate my disability and its refusal to meaningfully engage with me regarding a return to work within my medical restrictions. My employer knew that I wanted to work. My employer knew that I had previously performed light-duty work, which had proved to be an effective accommodation that did not place undue hardship on my employer. Following my complaints regarding the assignment of work outside my restrictions and my use of FMLA leave, however, this accommodation was not extended.

My employer effectively denied my request for reasonable accommodation, failed to engage with me in an interactive process to determine the appropriate accommodation as required by the ADA, and ultimately terminated my employment on the basis of my disability and use of related leave. Thus, I have been discriminated against because of my disability and retaliated against in violation of the Americans with Disabilities Act, as amended and (775ILCS 5/) Illinois Human Rights Act.

I have also been retaliated in violation of Illinois public policy for exercising a right under the Illinois Worker's Compensation Act, 820 ILCS 305/1, et seq.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>08/25/2026     P Dully<br>*Date*     *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |